**Erma MILLER, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 94–55226.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1995.

Decided Sept. 18, 1995.

---

A. Lavar Taylor, Santa Ana, CA, for plaintiff-appellant.

Gary R. Allen and Jonathan S. Cohen, United States Department of Justice, Tax Division, Washington, DC, for defendant-appellee.

Before: THOMPSON, LEAVY and TROTT, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Erma Miller appeals the district court's grant of summary judgment in favor of the Internal Revenue Service (IRS) on count I of her complaint, holding that she could not recover damages under § 7433 of the Internal Revenue Code for alleged misconduct by the IRS. Miller also appeals the district court's judgment after trial on count II, awarding Miller the minimum of $1,000 pursuant to § 7431 of the Internal Revenue Code for unauthorized disclosure by the IRS of tax return information. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm on both counts.

## FACTS and PROCEDURAL HISTORY

In mid-November of 1989, the IRS made a jeopardy assessment against Miller and her former husband, Lynn Stites, for allegedly unpaid 1987 federal income taxes. Miller filed an administrative claim challenging the jeopardy assessment. The claim was denied by the IRS. On March 16, 1990, Miller filed an action in the district court challenging the jeopardy assessment. One day before the case was to be tried, the IRS conceded that the jeopardy assessment against Miller and her husband should be abated.

On March 31, 1990, the Los Angeles Times, Valley Edition, published an article entitled "Fraud Inquiry Wins A Round In Court." The article, written by Myron Levin, reported:

> Attorney Lynn B. Stites, the focus of a criminal investigation in the "Alliance" insurance fraud case, has won a skirmish in his battle with the federal government, which bungled an attempt to seize $2.8 million it says Stites owes in unpaid taxes, according to papers filed in federal court in Los Angeles.

The article went on to report that the United States Attorney's office in Los Angeles had filed a notice that the disputed jeopardy assessment would not be defended and would be abated. The article stated that Stites was an attorney "who has been described in a nationwide media coverage as the alleged mastermind of an insurance scam involving a ring of Los Angeles area lawyers that prosecutors have called the 'Alliance.' " The article reported that:

> Lawyers in the U.S. Attorney's office in Los Angeles could not be reached; and an IRS spokeswoman declined comment on the case. An IRS official [Richard Dave-

ga] admitted that the agency has obtained little of value from the Stiteses. "Let's just say it was insignificant," he said.

Alleging that "[c]ourt papers and other records show the government botched the effort to tie up Stites's assets," the article went on to describe the IRS's failure to locate and seize assets. The article further stated:

> George D. Hardy, the assistant U.S. Attorney in San Diego heading up the Alliance investigation, said "depriving Stites of money to defend himself was 'absolutely not a strategy' in the jeopardy assessment."

On March 27, 1992, Miller filed a complaint in district court. Count I of her amended pleading alleged that the IRS had intentionally or recklessly made an erroneous jeopardy assessment against her, and sought $575,000 in damages pursuant to I.R.C. § 7433 for unauthorized collection actions. In count II Miller sought $181,734,000 in damages for an alleged disclosure of tax return information by Davega and Hardy in violation of I.R.C. § 7431, based on the two statements contained in the Los Angeles Times.

The district court dismissed count I for lack of subject matter jurisdiction on the ground that § 7433 can only be used to attack unlawful *collection* practices, not the validity or merits of an assessment. The district court ruled on count II after a trial that the statement by Davega was an unauthorized disclosure, but that Hardy's statement was not. Davega's statement was found as a matter of fact to be negligent, but not willful or grossly negligent. Miller timely appeals the decision of the district court.

## DISCUSSION

### I

■ Miller first appeals the district court's dismissal of count I for lack of subject matter jurisdiction under § 7433. Section 7433 of the Internal Revenue code provides that:

> If, *in connection with any collection* of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any

regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. (Emphasis added).

Jeopardy assessments are implemented where the assessment *or* collection of tax is determined to be in jeopardy. Under such circumstances, the IRS is authorized to make an immediate assessment without following the procedures required for an ordinary assessment, and then may proceed to collect the tax as assessed without delay. *See* I.R.C. §§ 6861, 6862. Section 6861 states that:

> If the Secretary believes that the assessment or collection of a deficiency . . . will be jeopardized by delay, he shall . . . immediately assess such deficiency . . . and notice and demand shall be made by the Secretary for the payment thereof.

The district court concluded that the assessment or tax determination part of the process is not an act of "collection" and therefore, not actionable under § 7433. Section 6861 has a two part purpose, assessment on one hand, and notice and demand on the other. Because the statutory requirements of "notice and demand" are under § 6303, chapter 64, Collection, "notice and demand" is a collection procedure. Therefore, an unlawful act in connection with "notice and demand" could trigger § 7433 liability. However, in this case, Miller does not allege a deficiency in the "notice and demand" procedures taken by the IRS; she alleges only an unlawful act in regard to the improper determination of her tax. Because of this distinction, Miller's claim that the jeopardy assessment was invalid and without foundation as a result of improper determination is not actionable as a matter of law under § 7433.

■ The Supreme Court has ruled that in a case involving the government's sovereign immunity the statute in question must be strictly construed in favor of the sovereign and may not be enlarged beyond the waiver its language expressly requires. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–35, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992). In regard to § 7433, the Fifth

Circuit has recently held, "based upon the plain language of the statute [§ 7433], which is clearly supported by the statute's legislative history, a taxpayer cannot seek damages under § 7433 for improper assessment of taxes." *Shaw v. United States,* 20 F.3d 182, 184 (5th Cir.), *cert denied,* —— U.S. ——, 115 S.Ct. 635, 130 L.Ed.2d 540 (1994). We agree. Moreover, the conference committee responsible for this legislation rejected a proposed amendment to allow taxpayers the right to sue for damages in connection with the *determination* of federal tax. The committee further stated, "An action under this provision [§ 7433] may not be based on alleged reckless or intentional disregard in connection with the determination of tax." H.R.Conf.Rep. No. 1104, 100th Cong., 2d Sess. 229 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5048, 5289. Because Miller is challenging only the determination of the tax, the claim is not actionable under § 7433 of the Internal Revenue Code. We hold that the district court properly granted the summary judgment motion in favor of the IRS for lack of subject matter jurisdiction. In so doing, we align ourselves with the Fifth Circuit as well as the First Circuit's holding in *Gonsalves v. IRS,* 975 F.2d 13, 16 (1st Cir. 1992), and affirm.

## II

Miller next claims that each copy of the 181,734 copies of the Los Angeles Times, Valley Edition, constituted an actionable unauthorized disclosure entitling her to redress under § 7431. Under her formula based on $1,000 per copy she would be entitled to $181,734,000 in damages.

Both parties agree that the district court correctly determined that an unauthorized disclosure was made by Davega under I.R.C. § 6103(b), entitling Miller to damages under § 7431(a) of the Internal Revenue Code. The question, however, is for how many disclosures is Miller entitled to damages, one, or 181,734?

Section 7431 states that:

(a) In general

(1) Disclosure by employee of the United States.—If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

. . . .

(c) Damages.—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of:

(1) the greater of:

(A) $1,000 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, or

(B) the sum of

(i) the actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus

(ii) in the case of a willful disclosure which is the result of gross negligence, punitive damages, plus

(2) the cost of the action.

To support her reading of this statute, Miller argues that disclosing information to a reporter is tantamount to disclosing it to the reporter's audience. She relies on *Mallas v. United States,* 993 F.2d 1111 (4th Cir.1993). In *Mallas,* the Fourth Circuit determined that the mailing of thirty-three letters containing revenue information constituted sixty-six disclosures due to the marital status of the recipients. *Id.* at 1124–25. Miller argues that the same logic can be extended to the IRS's disclosure to the Los Angeles Times. Other than *Mallas,* however, Miller's argument has no case law support; and the factual setting presented in *Mallas* is distinguishable. Thus, *Mallas* is not persuasive in this setting.

In addition to the lack of supporting case law, the public policy reason for not allowing this form of second party dissemination to be actionable is apparent. In the modern era of mass communication, one statement on the worldwide computer network or to a television reporter could result

in disseminations that could break our nation's treasury. For example, until Miller discovered that the disclosure was made only in the Times Valley Edition, she was seeking $1.1 billion in damages representing the paper's total circulation multiplied by $1,000 dollars. In a case involving no actual damages, such a prayer gives new meaning to "overreaching." Accordingly, we believe that the disclosure of information to a person who is likely to publish that information is relevant in determining the degree of negligence or recklessness involved, not the number of disclosures.

Because the statute punishes "disclosure," not subsequent disseminations, we conclude that extending *Mallas* into the current situation is not warranted. We are confident that Congress did not intend the bizarre remedy sought in this case. The district court correctly limited the IRS's damages for unauthorized disclosure to $1,000 for Davega's single statement to the Los Angeles Times, Valley Edition.

### III

■ Miller contends she is entitled to punitive damages because the district court erred in finding that, "Mr. Davega's release of taxpayer return information was negligent, but not willful or grossly negligent." A district court's finding of negligence is reviewed under the clearly erroneous standard. *Vollendorff v. United States*, 951 F.2d 215, 217 (9th Cir.1991); *Barnett v. Sea Land Serv., Inc.*, 875 F.2d 741, 745 (9th Cir.1989).

To establish gross negligence, Miller needed to present evidence demonstrating that Davega blatantly disregarded the rules governing disclosure. Miller's contention that Davega should have known better because he was educated on the subject of disclosure is insufficient to show that the district court's finding of simple negligence was clear error. The district court correctly viewed the disclosure as a momentary and insignificant oversight. To quote the court, "Well, I think this is an oops case. O–O–P–S, oops." The only evidence to counter this finding is the fact that Davega knew that Levin was a reporter and that Davega had been trained not to disclose taxpayer information. Even though

Davega's unauthorized disclosure of taxpayer return information to a reporter is more serious in the abstract than an unauthorized disclosure to a private citizen, we conclude the district court did not clearly err in finding that Davega's disclosure was the result of simple negligence. In the main, the record suggests that Miller and her attorneys have attempted to convert a proverbial molehill into Ft. Knox.

Because the disclosure by Davega was not willful or grossly negligent, we do not reach the issue of whether § 7431 punitive damages can apply where there are no actual damages.

### IV

■ Finally, Miller argues that Hardy's statement, "depriving Stites of money to defend himself was 'absolutely not a strategy' in the jeopardy assessment," was a disclosure of return information. The district court found that as a matter of law, no disclosure had taken place. We heartily agree.

The Internal Revenue Code § 6103(b)(2), defines return information as:

> (A) a taxpayer's identity, the nature, source or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over-assessments, or tax payments, whether taxpayer's return was, is being, or will be examined, or subject to other investigation, or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax penalty, interest, fine forfeiture or other imposition or offense, ...

> but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

Hardy's statement was not a disclosure of Miller's return information because: (1) the statement did not identify Miller, it only

identified Stites, (2) it disclosed no tax return information, and (3) Hardy's information did not come from IRS files.

■ Even if the article was a disclosure of Miller's tax return information, Hardy's statement was not an actionable disclosure under § 6103. "[O]nce return information is lawfully disclosed in a judicial forum, its subsequent disclosure by press release does not violate the Act." *Lampert v. United States*, 854 F.2d 335, 338 (9th Cir.1988), *cert. denied*, 490 U.S. 1034, 109 S.Ct. 1931, 104 L.Ed.2d 403 (1989). Hardy's statement was a response to an allegation that the United States Attorney's office was using the IRS to deprive Stites of money to defend himself. The record in this case shows that Hardy's denial of improper motive was based on the material already in the judicial record, not the IRS files. Therefore, the district court properly held that the comment by Hardy was not an unauthorized disclosure of Miller's return information under § 6103 of the Internal Revenue Code.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the district court on both counts I and II.

AFFIRMED.