359 F.3d 1200
 Zariq SIDDIQUI, husband; Greta L. Siddiqui, wife; Joseph Vullo; Elizabeth A. Vullo, wife; Vullo, No. Siddiqui & Associates, Ltd., an Arizona corporation, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 02-17123.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 11, 2004 — San Francisco, California.
 Filed March 9, 2004.
 
 A. Jerry Busby, Phoenix, Arizona, for the plaintiffs-appellants.
 Rod J. Rosenstein, United States Department of Justice, Tax Division, WA, Washington, D.C., for the defendant-appellee.
 Appeal from the United States District Court for the District of Arizona; Roslyn O. Silver, District Judge, Presiding, D.C. No. CV 99-01596-ROS.
 Before: Arthur L. ALARCÓN, Robert R. BEEZER, and William A. FLETCHER, Circuit Judges.
 Opinion by Judge Alarcón.
 OPINION
 ALARCÓN, Circuit Judge.
 
 
 1
 Zariq and Greta Siddiqui, Joseph, Richard and Elizabeth Vullo, and Vullo, Siddiqui & Associates, Ltd. ("VSA") (collectively, "Appellants") appeal from the district court's limitation of its award under 26 U.S.C. § 7431 to a total of $6,000 in statutory damages, and the denial of punitive damages for the unauthorized disclosure of income tax return information. We affirm because we conclude that only one act of disclosure occurred. We also hold that under § 7431 punitive damages are precluded absent proof of actual damages.
 
 
 2
 * On June 26, 1997, agents of the Internal Revenue Service ("IRS") conducted a search for evidence at the residences of Zariq Siddiqui and Joseph Vullo, and the corporate offices of VSA. VSA operated a business called "Bagel Nosh." The criminal investigation of Appellants continued for more than four years.
 
 
 3
 On October 24, 1998, approximately one hundred people attended IRS Special Agent Greg Heck's retirement party at a restaurant in Tempe, Arizona. The guests included active and retired IRS employees, federal prosecutors, agents from other law enforcement agencies, and private tax attorneys, including two lawyers who were representing Appellants in the ongoing criminal investigation.
 
 
 4
 During the party, some of the guests "roasted" Special Agent Heck about his career as an IRS agent. In response to his friends' attempts at humor, Special Agent Heck read a prepared "counter-roast" and presented mementos to accompany his remarks. When he gave a Bagel Nosh baseball cap to a colleague, he commented as follows:
 
 
 5
 And from the owner of Bagel Brothers, Bagel Nosh, I almost said that right, Bagel Nosh. An item of evidence that you missed at the search of the Vullo's [sic] and ah Siddiqui's [sic] house. They want you to have it. It says tax evasion evidence inside. It's still a pending case.
 
 
 6
 Embroidered on the back of the cap was a citation to 26 U.S.C. § 7201. Section 7201 provides that tax evasion is a felony, punishable by a fine and/or imprisonment of not more than five years. When the citation was read aloud, one of Appellants' defense counsel called out "7206(1)." Section 7206(1) of the Internal Revenue Code provides that a person who willfully makes a false statement is guilty of a felony punishable by a fine and/or imprisonment of not more than three years.
 
 
 7
 Appellants filed this civil action on September 3, 1999 seeking $600,000 as statutory damages for one hundred acts of disclosure of Appellants' tax return information in violation of 26 U.S.C. § 6103, as well as punitive damages. On December 21, 2001, Appellants filed a motion in which they alleged that they were entitled to summary judgment on their claim for statutory and punitive damages for the violation of § 6103. The Government filed a counter-motion for partial summary judgment on February 12, 2002. The Government contended that punitive damages are not available for a violation of § 6103, in the absence of proof of actual damages. The district court denied Appellants' motion and granted the Government's motion. On August 26, 2002, the court entered its final judgment based on the stipulation of the parties.[1] The district court awarded each of the six plaintiffs $1,000 in statutory damages for one act of disclosure and held that punitive damages are not available without proof of actual damages.
 
 II
 
 8
 Pursuant to § 6103, tax returns and tax return information generally must be kept confidential by federal, state, and local governments, and private parties. "Return information" includes "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing." § 6103(b)(2)(A). A taxpayer is authorized under § 7431 to abrogate the sovereign immunity of the United States and bring a civil action against the Government "[i]f any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103." § 7431(a)(1). Section 7431(c)(1)(A) provides for statutory damages as follows: "$1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable."
 
 
 9
 The Government concedes that Special Agent Heck's remarks constituted a grossly negligent violation of § 6103(a)(1). Appellants argue that because one hundred people heard Special Agent Heck's remarks, they suffered one hundred separate acts of disclosure and that, pursuant to § 7431(c)(1)(A), they are thus owed $600,000 — $1,000 for each of one hundred disclosures, for each of six Appellants. The Government maintains, on the other hand, that Appellants are owed only $6,000 — $1,000 for each of six Appellants — because regardless of how many people heard Special Agent Heck's illicit utterance, his single statement constituted only one act of disclosure under the statute.[2]
 
 
 10
 In Miller v. United States, 66 F.3d 220 (9th Cir.1995), we were called upon to determine whether an IRS agent's single disclosure of a plaintiff's tax return information to a newspaper reporter entitled the taxpayer to $181,734,000 in damages pursuant to § 7431(c)(1)(A) because an article based on the unauthorized disclosure was printed in 181,734 copies of the Los Angeles Times, Valley Edition. Id. at 221-23. We noted in Miller the lack of case law to support Mrs. Miller's claim for $184,734,000 in statutory damages and held that she was entitled only to $1,000 in statutory damages. Id. at 223-24. We further reasoned that public policy militated against Mrs. Miller's argument because "one statement on the worldwide computer network or to a television reporter could result in disseminations that could break our nation's treasury." Id. at 223-24. Consequently, we determined that "Congress did not intend the bizarre remedy sought." Id. at 224.
 
 
 11
 The plain meaning of the language used by Congress in § 6103 supports our focus in Miller on the act of disclosure rather than the number of people who receive unauthorized information. "The plain meaning of a statute is always controlling `unless that meaning would lead to absurd results.'" SEC v. McCarthy, 322 F.3d 650, 655 (9th Cir.2003) (quoting Reno v. NTSB, 45 F.3d 1375, 1379 (9th Cir.1995)). "The term `disclosure' means the making known to any person in any manner whatever a return or return information." § 6103(b)(8). Substituting the statutory definition of "disclosure" for that word in § 7431(c)(1)(A), Appellants are each entitled to "$1,000 for each act of ... [making known to any person in any manner whatever] a return or return information." The word "act" in common usage means "a thing done or being done: DEED, PERFORMANCE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 20 (1976). Special Agent Heck's unauthorized disclosure was effected in a single act. The fact that one hundred people in the audience may have heard Special Agent Heck's remarks does not change his single disclosure into one hundred separate acts of disclosure.
 
 
 12
 Appellants rely upon Mallas v. United States, 993 F.2d 1111 (4th Cir.1993), to support their contention that a separate act of disclosure occurs when each person receives unauthorized tax return information. In Mallas, the Fourth Circuit held that when the IRS mailed a single letter to two persons — each named in the mailing address — the IRS made the return information known to both addressees just as if it had used two separate letters. Id. at 1125. In Mallas, the Government committed two separate acts when it addressed the same envelope to each person living in a household, and as such, Mallas does not apply to the circumstances presented here, where only one act was performed. The district court did not err in limiting the award of statutory damages to $1,000 for each plaintiff.
 
 III
 
 13
 Appellants also argue that they are entitled to an award of punitive damages, notwithstanding the fact that they did not suffer actual damages. The Government argues that its sovereign immunity allows for an award of punitive damages only when "explicitly expressed" in the statute, and that any ambiguity as to the scope of the waiver of sovereign immunity should be resolved in favor of the United States. See Fostvedt v. United States, 978 F.2d 1201, 1203 (10th Cir.1992) ("A waiver of sovereign immunity cannot be implied, but must be explicitly expressed.").
 
 
 14
 We have not previously addressed whether punitive damages are available without proof of actual damages under § 7431(c)(1)(B). The section provides that a taxpayer is entitled to actual damages "plus" punitive damages.[3] The word "plus" means "an added quantity." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1745. Thus, the plain meaning of § 7431(c)(1)(B) indicates that punitive damages can be awarded in addition to any actual damages sustained by a taxpayer. In other statutes, Congress has expressly authorized an award of punitive damages in the absence of proof of actual damages. In 12 U.S.C. § 1723a(e), Congress provided that in an action to enjoin the unauthorized use of the words "Federal National Mortgage Association," "the plaintiff may recover any actual damages flowing from such violation, and, in addition, shall be entitled to punitive damages (regardless of the existence or nonexistence of actual damage) of not exceeding $100 for each day during which such violation is committed or repeated." (emphasis added). In 45 U.S.C. § 711(j), Congress provided that in an action for the unauthorized use of the name "United States Railway Association," "the Association may recover any actual damages flowing from such violation, and, in addition, shall be entitled to punitive damages (regardless of the existence or nonexistence of actual damage) in an amount not to exceed $100 for each day during which such violation was committed." (emphasis added).
 
 
 15
 Because the award of damages under § 7431 is allowed only pursuant to an express waiver of the Government's sovereign immunity, ambiguity as to whether § 7431(c)(1)(B) authorizes a punitive damages award absent proof of actual damages must be resolved in favor of the Government. Under longstanding principle, "the Government's consent to be sued must be construed strictly in favor of the sovereign and not be enlarge[d] ... beyond what language requires." United States v. Nordic Vill., Inc., 503 U.S. 30, 34, 112 S.Ct. 101, 117 L.Ed.2d 181 (1992) (quotation marks and internal citations omitted). In Nordic Village, the Court held that when two contrary interpretations with respect to the proper scope of a statutory waiver of sovereign immunity are supportable, courts should not read the ambiguous portion of the statute to find a waiver. Id. at 34-37, 112 S.Ct. 1011. The Government and Appellants propose contrary interpretations of § 7431(c)(1)(B). Because both interpretations are plausible, Congress has not plainly waived the Government's sovereign immunity by clearly authorizing punitive damages without proof of actual damages.
 
 
 16
 Congress has demonstrated that it knows how to express unequivocally its intent to authorize the award of punitive damages without proof of actual damages when it so desires. Congress did not do so when it enacted § 7431(c)(1)(B). We hold that § 7431(c)(1)(B) precludes punitive damages against the United States absent proof of actual damages.
 
 
 17
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The stipulation provides in pertinent part: "Pursuant to the Order entered July 9, 2002, that the Court should direct the Clerk to enter Judgment for the plaintiffs and against the defendant on all claims asserted in Count II of the First Amended Complaint, in the amount of $1,000 for each plaintiff."
 
 
 [2]
 We review de novo both the district court's grant of summary judgment and its interpretation of the Internal Revenue CodeAbelein v. United States, 323 F.3d 1210, 1213 (9th Cir.2003).
 
 
 [3]
 Section 7431(c) reads as follows:
 Damages. — In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of —
 (1) the greater of—
 (A) $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or (B) the sum of —
 (i) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus
 (ii) in the case of willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus
 (2) the costs of the action, plus
 (3) in [certain cases], reasonable attorneys fees.
 (emphasis added).