SMITH, Circuit Judge.
Certain Taxpayers sued the United States[2] alleging numerous disclosures of taxpayer return information by Special Agent Robert Jackson of the Internal Revenue Service (IRS), in violation of 26 U.S.C. § 6103. Following a bench trial, the district court entered judgment in favor of Taxpayers. The court awarded actual, statutory, and punitive damages, as well as expert witness and attorney’s fees. The government appeals, raising several allegations of error. Taxpayers cross-appeal, arguing that the district court erred by not finding additional unauthorized disclosures. We affirm in part and reverse in part.
I. Background
Taxpayer Leonard Snider operated a business called National Sales and Service, LLC (“NSS”). Taxpayer Theresa Turley operated a business called Labor Resources. These businesses supplied workers to hotels and businesses near the Lake of the Ozarks, Missouri. In July of 2001, the IRS opened a criminal administrative investigation against Snider and Turley after receiving a tip that they were not paying income and employment taxes, employing illegal aliens, submitting false documents regarding those illegal aliens, and engaging in money laundering.
Special Agent Robert Jackson with the IRS Criminal Investigation Division in Kansas City, Missouri, performed the investigation. In the course of his investigation, Jackson disclosed certain “return information” regarding the Taxpayers without legal authorization, in violation of § 6103. Essentially, Jackson told many third parties that the Taxpayers were being investigated for criminal tax violations and accused the Taxpayers of several crimes. Jackson also warned some of the *505 Taxpayers’ business customers that they might be liable for the Taxpayers’ unpaid taxes.
In one instance, Jackson interviewed In-eke Kirby, who performed accounting services for Turley in 2000 and 2001. During the interview, Jackson made the following affirmative statements, all of which constituted return information: (1) Turley had a large increase in income from 1999 to 2000 that was questionable; (2) Turley employed illegal immigrants; (3) Turley was avoiding paying employer taxes; (4) Tur-ley and Snider were involved in money laundering; and (5) Turley’s workers used fake social security numbers. Jackson also disclosed return information when he showed Turley’s 1999 tax return to Kirby, which was the first time she had seen it. From this encounter, the district court found one unauthorized disclosure as to Snider and six unauthorized disclosures as to Turley.
In the course of his investigation, Jackson approached various employees, business associates, and customers for interviews. During the interviews, Jackson stated to the interviewees that he was conducting a criminal investigation of Taxpayers. He represented to the interviewees that Taxpayers did not pay employment taxes, employed and harbored illegal immigrants, and were “involved in a scam” and a “grand conspiracy.” In addition, Jackson repeatedly referred to Snider and Turley as criminals and stated that Snider had been criminally investigated previously. Jackson also told customers that they might be hable to the United States for Snider and Turley’s “thousands and thousands of dollars” of unpaid taxes. Jackson showed numerous people various tax documents that the Taxpayers had filed. Lastly, after the administrative investigation ended and a grand jury investigation began, Jackson told interviewees that he was conducting a grand jury investigation of Taxpayers.
After noting the extensive training and written instructions that Jackson had received, the district court concluded that “Jackson repeatedly and intentionally engaged in conduct outside the standard of conduct for IRS special agents” and “further f[ound] that Jackson’s Section 6103 disclosures were made knowingly, willfully, and intentionally and were the result of gross negligence as defined by [26 U.S.C. § ] 7431(c)(1)(B)®.”
In total, the district court found Jackson made 79[3] unauthorized disclosures of re *506 turn information to approximately 20 people. As demonstrated by the Kirby interview, the district court counted each piece of return information as an unauthorized disclosure. Thus, although Jackson only interviewed Kirby once, the six pieces of Turley’s return information disclosed counted as six violations of § 6103. Similarly, the district court counted one unauthorized statement that was overheard by two people as two violations. For example, when Jackson interviewed Jennifer Fry, her husband, Greg Fry, was present and heard the entire conversation. Therefore, the district court considered each statement of unauthorized return information as two violations of § 6103 because two people received the disclosure. Counted in this fashion, the district court determined that Snider suffered 44 unauthorized disclosures, NSS suffered 6 unauthorized disclosures, and Turley suffered 29 unauthorized disclosures. The court declined to find that Jackson’s March 10, 2002 Sworn Declaration filed with the court contained improper disclosures under § 6103.
The court found that Taxpayers substantially prevailed within the meaning of 26 U.S.C. § 7430(c)(4), entitling them to reasonable litigation costs and attorney’s fees. The court also found that the government’s position was not substantially justified as defined by § 7430(c)(4)(B). Finding that the actual damages sustained by Snider and Turley were less than $1,000 for each disclosure, the court awarded them statutory damages of $44,000 and $29,000, respectively. The court found that four of the disclosures as to NSS resulted in actual damages less than $1,000 and that the disclosure to two of NSS’s clients resulted in actual damages totaling $9,794.63. Therefore, the court awarded NSS $4,000 in statutory damages and $9,794.63 in actual damages.
After finding that punitive damages were “warranted and necessary to punish the willful behavior and gross negligence of Jackson and to deter such behavior by others,” the court awarded punitive damages using a ratio of two-to-one. Consequently, Snider, NSS, and Turley received punitive damages of $88,000, $27,589.26, and $58,000, respectively. The court also awarded Taxpayers expert witness fees of $4,050, costs of $4,400, and attorney’s fees of $463,777.50.
The government asks this court to reverse the district court in essentially every respect, including the merits of the action, the calculation of damages, and the award of attorney’s fees. Taxpayers, in their cross-appeal, ask this court to hold that Jackson’s disclosures before the district court were unauthorized and to increase the damages award.
II. Discussion
The Internal Revenue Code (IRC) provides that “Returns and return information shall be confidential” and strictly prohibits government employees from disclosing “any return or return information.” 26 U.S.C. § 6103(a). The IRC broadly defines “return information” as
a taxpayer’s identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassess-ments, or tax payments, whether the taxpayer’s return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with *507 respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense....
26 U.S.C. § 6103(b)(2)(A). A revenue officer may properly disclose return information “in connection with his official duties relating to any ... civil or criminal investigation ... to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to” the investigation. § 6103(k)(6). The statute further requires that “[s]uch disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.” Id.
A. Authorization
The government argues that the disclosures made by Jackson were authorized. Specifically, the government contends that § 6103 permits the investigator to identify himself, state that he is performing a criminal investigation, and name the taxpayer under investigation. We disagree. Section 6103 clearly defines both “a taxpayer’s identity” and “whether the taxpayer’s return was, is being, or will be examined or subject to other investigation” as “return information.” Therefore, the disclosures made by Jackson were clearly prohibited by statute. In addition, in a section entitled “Return Information,” the Internal Revenue Manual recognizes that “The statutory definition of ‘return information’ is very broad.” IRM § 9.3.1.2.2. It goes on to state that an example of “return information” is “the fact that a person is under investigation.” Id.
The government’s argument that agents should be able to show their badges and identify themselves as criminal investigators as a necessary part of their investigation misses the mark. Such conduct is not prohibited by statute and does not constitute a disclosure of return information. An agent violates the statute, as well as the Internal Revenue Manual, when he or she identifies the subject of his or her investigation.
The government has neither shown that the disclosure of the Taxpayers’ identity was necessary nor does the record reveal any necessity for the disclosures. First, Snider’s attorney offered to supply the information that the IRS sought. However, Officer Jackson never attempted to obtain the documents from Snider. Second, Officer Jackson maintained throughout the litigation that he never made the disclosures during his investigation. The district court logically concluded the disclosures could not be both necessary and yet unmade during Jackson’s investigation. We agree with the district court’s analysis.
B. Good Faith
The government next asserts that it should not be liable because the disclosures were made in good faith. Even if an unauthorized disclosure is made, the Internal Revenue Code excludes liability “with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103.” 26 U.S.C. § 7431(b)(1). Under the good-faith defense, a government official may avoid liability for violating a constitutional or statutory right where that right is not clearly established such that a reasonable person would have known that his or her conduct violated the right. See Jones v. United States, 97 F.3d 1121, 1124 (8th Cir.1996) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The government bears the burden of proving the good-faith defense. Jones, 97 F.3d at 1124.
*508 We hold that the district court did not err in finding that the government failed to establish the good-faith defense. As mentioned above, the plain language of the statute prohibits the disclosure of both “a taxpayer’s identity” and “whether the taxpayer’s return was, is being, or will be examined or subject to other investigation,” as both forms of information constitute “return information.” Therefore, it cannot be said that a reasonable officer would have failed to understand that such a disclosure would violate a clearly established right of the taxpayer.
C. Grand Jury Investigation
The government next contends that disclosing the fact that Taxpayers were under grand jury investigation is not a disclosure of return information. However, the statute plainly provides that the fact that a taxpayer is under grand jury investigation constitutes “return information” because the statute defines “return information” to include “whether the taxpayer ] ... is being, or will be ... subject to other investigation § 6103(b)(2) (emphasis added). While the government is correct that an agent can disclose that he or she is making an official inquiry, this does not mean that the agent can disclose the target of the investigation. The same reasons mentioned above that apply to disclosing the identity of the taxpayer under criminal investigation apply to disclosing the identity of a taxpayer under grand jury investigation. Therefore, the disclosure that the taxpayers were under investigation by a grand jury was not authorized and was not made in good faith.[4]
D. Counting Disclosures
Next, the government challenges the district court’s method of counting. The government urges that we hold that (1) a disclosure to more than one person at a time amounts to one act of disclosure; and (2) a disclosure of more than one piece of return information in a single interview constitutes a single act of disclosure. We disagree. Increased culpability warrants increased punishment. Direct disclosures to multiple persons multiplies the harm to the taxpayer. Our sister circuit has held that one disclosure to two people counts as two separate disclosures. Mallas v. United States, 993 F.2d 1111, 1125 (4th Cir.1993). As Mallas recognized, § 7431(c)(1)(A) imposes statutory damages for “each act of unauthorized disclosure of ... return information,” and § 6103(b)(8) defines “disclosure” as “making known to any person in any manner whatever a return or return information.” Id. Accepting the government’s position would nullify the language “in any manner whatever.” Id. If a government official directly discloses a taxpayer’s return information to two listeners at the same time, the official has informed both listeners and caused as much harm as telling them separately. Id. We see no reason why the government should benefit from a wider audience, especially where a wider audience means an increased injury to the taxpayer’s privacy. The same reasoning applies to the quantity of information disclosed.
At the same time, we recognize the concerns addressed in Miller v. United States, 66 F.3d 220 (9th Cir.1995). In *509 Miller, the Ninth Circuit held that the IRS’s disclosure of return information to a Los Angeles Times reporter, who subsequently published 184,000 newspapers containing the information, represented a single act of disclosure rather than 184,000 acts of disclosure. Id. at 223-24. The court reasoned that § 7431 “punishes ‘disclosure,’ not subsequent disseminations” and declined to extend Mallas to such, a situation. Id. at 224. We agree that the proper limitation of liability is the initial act of disclosure, not secondary disclosures made by others such as the media. Because § 7431 represents a waiver of sovereign immunity, it must be “strictly construed, in terms of its scope, in favor of the sovereign.” Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).
However, we do not agree with the Ninth Circuit’s holding in Siddiqui v. United States, 359 F.3d 1200, 1202-03 (9th Cir.2004), which extended Miller and declined to impose liability for an agent’s unauthorized disclosure of return information in a speech to a party of 100 people. As discussed above, we believe that liability should track culpability and injury. A disclosure to 100 people is certainly more egregious than a disclosure to one person, and we believe that Congress drafted the statute to scale damages to injury and culpability with respect to the agent’s own acts of disclosure. The method of counting performed by the district court is affirmed.
E. Actual Damages
The government also challenges the district court’s award of actual damages to NSS, contending that they are not supported in the record. “ ‘In reviewing a district court’s order entering judgment after a bench trial, we review the court’s factual findings for clear error and its legal conclusions de novo.’ ” Robinson v. GEI-CO Gen. Ins. Co., 447 F.3d 1096, 1101 (8th Cir.2006) (quoting Padlock v. Powell, 291 F.3d 541, 546 (8th Cir.2002) (citing Fed. R. Civ.P. 52(a))). A factual finding is clearly erroneous when- “although there is evidence to support a finding, on the entire evidence we are left with the definite and firm conviction that a mistake has been committed.” Hoefelman v. Conservation Comm’n of Mo. Dept. of Conservation, 718 F.2d 281, 285 (8th Cir.1983). “A factual finding supported by substantial evidence on the record is not clearly erroneous. . A district court’s choice between two permissible views of evidence cannot' be clearly erroneous.” Robinson 447 F.3d at 1101 (citation and internal quotations omitted).
Here, the actual damages award is composed of two sets of damages-one from the Holiday Inn SunSpree’s refusal to pay $3,638 under its contract with NSS and the other from The Knolls Condominiums’ refusal to pay $6,156 under its contract with NSS. As for Holiday Inn, the district court committed no clear error. The court‘specifically found that Jackson made an unauthorized disclosure of NSS return information to Mark Bowman, the general manager of Holiday Inn SunSpree. Furthermore, the district court specifically found that “[t]he evidence at trial demonstrates that .the Holiday Inn terminated its contract with NSS after Jackson advised the general manager of'the potential civil liability for payroll taxes due on accounts of the workers NSS supplied to the ho-tel____ Holiday Inn Sun Spree [sic] and The Knolls Condominiums both refused to pay outstanding invoices due and owing to NSS after meeting with Jackson.”
With regard to The Knolls, the district court did not make specific mention of any unauthorized disclosure of NSS return information to any representative of the Knolls. However, Taxpayers point out *510 that the district court heard evidence that on October 4, 2001, Jackson interviewed Dick Musial, the general manager of The Knolls, and Marjorie Forbis, the housekeeping supervisor at The Knolls, and that while Jackson was still on the premises, The Knolls “immediately terminated all workers supplied by [NSS] even though they were good workers.”[5] The court also heard testimony from two witnesses that The Knolls considered NSS to have breached its contract. On this record, we are not left with a firm conviction that a mistake was made and affirm.
F. Punitive Damages
The government alleges that punitive damages are not available to the Taxpayers under § 7431(c)(1). The government is correct. Section 7431(c)(1) allows either (A) statutory damages; or (B) actual damages plus punitive damages, when available. Therefore, a plaintiff receiving statutory damages for an unauthorized disclosure cannot also recover punitive damages. Mallas, 993 F.2d at 1125-26. Other than the disclosures made to Holiday Inn SunSpree and The Knolls, the district court found that “the actual damages sustained by [Taxpayers] as a result of the unauthorized disclosures of return information are less than $1,000 for each disclosure.” However, the court awarded punitive damages to Snider in the amount of $88,000, to NSS in the amount of $27,589.26, and to Turley in the amount of $58,000.
To the extent that the punitive damages overlap with statutory damages, the district court erred. We thus vacate the award of punitive damages to Snider and Turley. However, with respect to the punitive damages awarded to NSS, part of this award was based on actual damages. Because the district court followed a two-to-one ratio in assessing punitive damages, we amend the court’s award to NSS to $19,589.26 in punitive damages based upon the $9,794.63 in actual damages. The remaining $8,000 in punitive damages awarded to NSS were based on the $4,000 in statutory damages awarded, and we vacate this portion of the punitive damages awarded to NSS.
G. Attorney’s Fees
The government argues that the Taxpayers were not entitled to attorney’s fees because “they did not substantially prevail as to the amount in controversy, and because the position of the United States was substantially justified.” The government does not challenge the amount of the award. The Taxpayers respond that (1) they are entitled to fees even if the government’s position was substantially justified; (2) they substantially prevailed with respect to the amount in controversy and the most significant issue (that Jackson made numerous disclosures of return information); and (3) the government’s position was not substantially justified.
Section 7431(c)(2)(3) allows a plaintiff to recover reasonable attorney’s fees against the United States but only if the plaintiff is a “prevailing party” within the meaning of 26 U.S.C. § 7430(c)(4). Section 7430(c)(4) defines “prevailing party” as a party who either “has substantially prevailed with respect to the amount in controversy” or “has substantially prevailed with respect to the most significant issue or set of issues presented.” However, “[a] party shall not be treated as a prevailing party ... if the United States *511 establishes that the position of the United States in the proceeding was substantially justified.” § 7430(c)(4)(B). We review the district court’s award of attorney’s fees for an abuse of discretion. Kaffenberger v. United States, 314 F.3d 944, 960 (8th Cir.2003).
Given the plain language of the statutes, Taxpayers fail in their argument that they are entitled to attorney’s fees notwithstanding whether or not the government’s position was substantially justified. The issues, then, are whether Taxpayers substantially prevailed and whether the government has shown that its position was substantially justified. We hold that the Taxpayers substantially prevailed and that the government’s position was not substantially justified. Thus, the award of attorney’s fees stands.
The Taxpayers substantially prevailed because they established that Jackson made numerous disclosures of return information. The conduct of Jackson certainly was “the most significant issue ... presented” because the entire case turned upon his conduct, i.e., whether he made unauthorized disclosures of return information. By prevailing on this point, the Taxpayers substantially prevailed within the meaning of § 7430(c)(4)(A).[6]
We hold that the government’s position was not substantially justified. The government contends that its position was substantially justified, arguing primarily that the decisive issue was one of witness credibility. The government cites Jones v. United States, 207 F.3d 508, 512-13 (8th Cir.2000), which held that the district court correctly found that the government was substantially justified in its position because the IRS agent asserted that he never told the informant about the search warrant and the government was warranted in aggressively resisting the taxpayers’ excessive damages claims. The government argues that under Jones, if the issue is witness credibility, then the government’s position is always substantially justified.
We do not read Jones so broadly. Jones is distinguishable from the case at bar due to the number of disclosures involved and, more importantly, the number of witnesses to those disclosures. Jones involved the disclosure of a search warrant to one person — an informant. Here, Jackson made numerous unauthorized disclosures of return information to approximately twenty people. After deposing several of the Taxpayers’ witnesses before trial, the government should have realized that Jackson lied when he maintained that he never made the alleged disclosures and thus that the government’s position was not substantially justified. To that end, the district court made the following pointed observation: “At trial, [Taxpayers] produced 20 disclosure fact witnesses. Their collective testimonies were remarkably consistent in describing repeated, virtually identical, unnecessary disclosures, and provide compelling evidence of a pattern of improper disclosures by Jackson.” Accordingly, we affirm the district court’s award of attorney’s fees.
*512 H. Expert Witness Fees
The district court awarded Taxpayers $4,050 in expert witness fees. The government posits that expert witness fees are not recoverable, and Taxpayers concede as much. We therefore vacate the award of expert witness fees.
I. Disclosures During Instant Litigation
In their cross appeal, Taxpayers allege that Jackson made additional unauthorized disclosures to the Department of Justice in his March 5, 2002 Sworn Declaration and that these disclosures were then disclosed to the court. Specifically, Taxpayers argue that (1) the disclosures were “unnecessary to defend a civil damage claim and are contrary to the scope and purpose of § 6103;” and (2) the government failed to “obtain the requisite request to disclose return information” in the proceedings below.
The government’s most persuasive response is that the Taxpayers raise these arguments for the first time on appeal. We agree. Taxpayers argued before the district court that the disclosures were unauthorized because the civil proceedings below were “not ‘tax administration’ proceedings as defined in 26 U.S.C. § 6103(b)(4).” We agree with the government that this is not the same argument advanced on appeal.
As a general rule, we will not consider issues raised for the first time on appeal. Norwest Bank of N.D., N.A. v. Doth, 159 F.3d 328, 334 (8th Cir.1998). ‘We may, however, consider an issue for the first time on appeal ‘when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case,’ or where manifest injustice might otherwise result.” Id. (citation omitted). With respect to Taxpayers’ argument regarding obtaining the requisite request for disclosure, the issue is not properly before us. Although Taxpayers aver that, they raise “only issues of law,” their opening brief belies this contention by pointing to the government’s failed attempt to establish authorization pursuant to § 6103(h)(3). Taxpayers’ argument regarding the necessity of the disclosure is closer to a purely legal issue; however, we decline to broadly review issues not raised and ruled upon by the district court.
III. Conclusion
We affirm in part and reverse in part. Jackson’s numerous disclosures of return information, including the fact that Taxpayers were under grand jury investigation, were unauthorized and were not made in good faith. Additionally, the district court properly counted the number of violations because the Taxpayers suffered increased injury to their statutorily protected privacy by the increased volume of information disclosed and the widened audience to whom the disclosures were made. We hold that the actual damages awarded are allowed by law and supported by the record. With regard to the punitive damages, we reverse the award with respect to the disclosures for which the district court assessed statutory damages, reducing the punitive damages to $19,589.26. Because the Taxpayers substantially prevailed and the government’s position was not substantially justified, we affirm the award of attorney’s fees. We vacate the district court’s award of expert witness fees. As for Taxpayers’ cross appeal, we decline to reach the merits because the issues were not presented to the district court.

. 26 U.S.C. § 7431.

. On page 14 of the district court's opinion, the court stated that Jackson made 78 disclosures of return information. The court stated in the paragraphs that immediately followed that Snider, NSS, and Turley suffered 44, 5, and 29 disclosures respectively. By our assessment of the record, this is a typographical error, as the district court in fact found 79 total disclosures. The reason for the discrepancy is that NSS actually suffered 6 disclosures of return information. On page 25 of the district court's opinion, the district court, discussing the damages to be awarded to each party, awarded NSS actual damages for the improper disclosures to Holiday Inn Sun-Spree and The Knolls Condominiums. The court then stated, "Having found 4 additional unlawful disclosures with respect to NSS, other than those made to the Holiday Inn Sun Spree [sic] and The Knolls Condominiums, the Court awards plaintiff NSS an additional $4,000 in statutory damages.”
In the district court's recitation of the facts at the beginning of its opinion, it fails to mention the basis for the disclosure of NSS return information that caused NSS actual damages under its contract with The Knolls Condominiums. As discussed infra in Part II.B, the district court heard substantial evidence that NSS did in fact suffer such a disclosure, causing actual damages.
Considering the district court's opinion in its entirety, as well as the briefing of the parties with respect to the disclosures made to The Knolls, we believe that the actual num *506 ber of disclosures found by the district court is 79, six of which were made as to NSS.

. Although the government says that only one district court opinion from another circuit supports the decision below, this argument misses the point, which is that the plain text of the statute prohibits Officer Jackson's actions. Therefore, the law was clearly established, albeit not by a court decision but by legislative pronouncement. Furthermore, the government fails to point to any case that actually adopted the rule that the government proposes. As mentioned, the government bears the burden of proving good faith.

. Although Jackson made unauthorized disclosures to Marjorie Forbis, the housekeeping supervisor at The Knolls, the district court found that these disclosures pertained to Tur-ley and Snider—not to NSS.

. The government attempts to make a legislative history argument that the amount in controversy is "determinative.” However, the plain language of the statute says that a "prevailing party” is one that has substantially prevailed "with respect to the amount in controversy” or "with respect to the most significant issue.” 26 U.S.C. § 7430(c)(4)(A). Because the statute is clear and unambiguous, we need not resort to legislative history.
Similarly, the government’s attempt to distinguish legal issues from factual issues is unpersuasive. The statute says "issues” and does not distinguish between factual and legal issues.