# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3191

_____

Karla Robinson,     *

                    *

          Appellant,     *

                    *    Appeal from the United States

    v.                   *    District Court for the

                    *    Eastern District of Missouri.

GEICO General Insurance Company,     *

                    *

          Appellee.     *

_____

Submitted: February 13, 2006
Filed: May 19, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Karla Robinson sued her auto insurance company, GEICO General Insurance Company, seeking payment of damages allegedly caused by an underinsured motorist. Following a bench trial, the district court[1] found that Robinson failed to prove the accident caused her injury. On appeal, Robinson challenges the admissibility of GEICO's medical expert testimony and the district court's conclusions regarding causation. We hold that (1) the district court did not abuse its discretion by allowing

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

the testimony of GEICO's medical expert; and (2) this testimony provided substantial evidence in support of the district court's findings. Therefore, we affirm.

## I. *Background*

Robinson's vehicle was struck in the rear while in line to turn off an I-55 exit ramp. Joseph Groves's car crashed into the back of James Firestine's truck, which then bumped Robinson's vehicle. The relatively minor impact caused $650 in damages to Robinson's rear bumper. Robinson's vehicle did not strike the car in front of her. Firestine was not immediately aware that his vehicle had actually struck Robinson's bumper. Both Robinson and Firestine drove their respective vehicles from the accident scene.

Several hours later, Robinson began to feel pain in her neck, right shoulder, and back. Two days later, Robinson called her physician, Dr. Susan Reynolds, to schedule an appointment. Robinson saw Dr. Reynolds five days later. Dr. Reynolds referred Robinson to Dr. Thomas Lee, an orthopedic specialist. A few days later, Robinson saw Dr. Lee, who diagnosed Robinson with a right rotator cuff contusion and lumbar sprain. X-rays of Robinson's right shoulder revealed a pre-accident condition called a Type II acromion[2] with a bone spur. Dr. Lee prescribed medication and physical therapy. When this treatment failed to resolve Robinson's shoulder pain, Dr. Lee performed surgery, removing the bone spur and part of the clavicle to increase the space between the rotator cuff and the acromion bone. The surgery successfully relieved Robinson's pain.

---

[2]The acromion is the "lateral end of the spine of the scapula which projects as a broad flattened process overhanging the glenoid fossa; it articulates with the clavicle and gives attachment to part of the deltoid and of the trapezius muscles." STEDMAN'S MEDICAL DICTIONARY 17 (4th ed. 1976). "Acromions are classified by degree of curvature, from Type I through Type III. As curvature increases, the space between the rotator cuff and [the] acromion decreases. Dr. Lee described the Type II acromion as a congenital abnormality." Dist. Ct. Opinion at 5 n.4.

Robinson sued Groves and Firestine in state court and settled the claims for the $25,000 policy limit of the responsible party. Robinson then filed a claim for $75,000 under the $100,000 underinsured motorist ("UIM") coverage in her automobile insurance policy with GEICO. After Robinson rejected GEICO's offer to settle for $7,500, she pursued the instant case in district court.

At trial, testimony focused on the extent of Robinson's injury traceable to the I-55 automobile accident. Robinson testified that before the accident, she saw Groves's car approaching, anticipated a collision, and placed her right arm on the dashboard to brace herself. She claimed that her right arm was outstretched and that her right shoulder absorbed most of the force from the impact. Robinson relied upon the testimony of Dr. Lee to establish causation. Dr. Lee testified that rear impact while one's arm is locked could drive the rotator cuff against the acromion, bruising the tendon and causing it to swell. Dr. Lee further testified that subsequent arm movements rub the swollen tendon against the bone, which increases the swelling further exacerbating the pain.

Dr. Lee opined that Robinson's shoulder injury could have occurred even if Robinson had not braced herself against the steering wheel because she wore a seatbelt. According to Lee, seatbelt restraint increased the likelihood of impingement of the right shoulder because the right shoulder would accelerate as she pivoted forward from the impact. Dr. Lee testified that persons with Type II acromion are more prone to adhesive capsulitis and opined that Robinson probably had adhesive capsulitis when Dr. Bassman treated her in 1992.[3] Dr. Lee also testified that

[3]In 1992, several years before the accident, Robinson was injured at work. At trial, she testified that the injury was caused by 12-packs of beer falling on her. However, reports prepared at the time state that Robinson attributed the injury to excessive lifting and did not mention any falling objects. After the work injury, Robinson saw Dr. Bassman, who diagnosed her with a strained shoulder. In 1994, Dr. Bassman saw Robinson again, but at trial, Robinson denied that Dr. Bassman's records

-3-

Robinson's "shoulder forward posture," noted in a 1994 medical report, can adversely affect shoulder impingement. With regard to Robinson's back injuries, Dr. Lee concluded that the accident aggravated her degenerative disk disease.

Dr. Simon Horenstein, a neurologist, testified on behalf of GEICO that the I-55 automobile accident did not injure Robinson's right shoulder. Dr. Horenstein explained that the shoulder area has a dense supply of nerves, and consequently, one who suffers an injury to the shoulder joint is "usually symptomatic immediately." Because Robinson did not experience shoulder pain until hours after the accident and did not seek medical attention for two days following the accident, Dr. Horenstein considered the onset of Robinson's symptoms more consistent with "muscle discomfort" as a result of "jostling or postural distortion" than a consequence of shoulder joint injury.

Dr. Horenstein contradicted Dr. Lee's theory regarding the mechanism of injury. Dr. Horenstein stated that when the extended arm is struck from the palm, the arm acts like a battering ram into the glenoid fossa. Robinson did not have an injury to the glenoid fossa but was treated for pain in the acromioclavicular joint ("AC joint"). Dr. Horenstein testified that injuries to the AC joint are typically associated with a blow to the top or front of the shoulder. However, Robinson's shoulder did not strike any object as a result of the collision. In addition, Dr. Horenstein cited a long-term study conducted by the Canadian government theorizing that a rear-impact collision causes one to be thrown backward. Under that theory, Robinson's body would have initially

referred to her, insisting that Dr. Bassman must have another left-handed patient named Karla Robinson, who had a similar shoulder condition. In her answers to interrogatories in the lawsuit against Groves and Firestine, Robinson did not disclose the prior injury or her treatments by Dr. Bassman. In her answers to GEICO's interrogatories, Robinson did not disclose that she fell down a set of steps in October 2001 (approximately eleven months after the automobile accident) and received physical therapy on her right buttock and leg. As a result, the district court found Robinson lacked credibility.

moved away from the dashboard, contrary to the theory offered by her expert that her body thrust forward causing the extended right arm to jar into her shoulder. Dr. Horenstein concluded that the condition in Robinson's AC joint was preexisting shoulder joint disease.

Following a bench trial, the district court ruled in favor of GEICO, finding that Robinson failed to establish causation by a preponderance of the evidence. The court accepted Dr. Horenstein's testimony, finding that Robinson's preexisting shoulder condition likely necessitated the surgery rather than the automobile accident. The court discounted Dr. Lee's opinion because Robinson did not inform Dr. Lee of the 1992 and 1994 episodes of shoulder pain and did not accurately represent the circumstances of the collision to him.[4] With respect to Robinson's alleged back injuries, the district court found that Robinson failed to identify any specific damages attributable to her back pain and could not establish that such damages would exceed the $25,000 settlement that she received from her state court action against Groves and Firestine. Robinson then filed the instant appeal to the judgment of the district court.

## II. *Discussion*

On appeal, Robinson argues that Dr. Horenstein's testimony was inadmissible and that the district court's findings are contradicted by the record. For the following reasons, we affirm.

---

[4]In her initial visit with Dr. Lee, Robinson stated that her vehicle sustained a heavy impact from the rear and that her hands were on the steering wheel, with her right arm "sort of braced." Dr. Lee testified that he understood that Robinson's body came forward against the steering wheel.

## A. *Medical Expert Testimony*

Robinson challenges the admissibility of Dr. Horenstein's testimony, which was critical to the outcome of the case. Specifically, Robinson contends that Dr. Horenstein, a neurologist, testified outside of his expertise and thus was not a "qualified" expert within the meaning of Rule 702 of the Federal Rules of Evidence. We disagree.

Rule 702 provides

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Fed. R. Evid. 702 advisory committee's note. *Daubert* charged trial judges with acting as gatekeepers to exclude unreliable expert testimony. *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). *Daubert* provides a district court with the discretion necessary to close the courtroom door to "junk science" and to admit reliable expert testimony that will aid the trier of fact. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. We

review a district court's decision to admit expert testimony for an abuse of discretion. *United States v. Cawthorn*, 429 F.3d 793, 799 (8th Cir. 2005).

The district court did not abuse its discretion by allowing the testimony of Dr. Horenstein. Rule 702 does not require a defense medical expert to be of the identical medical speciality as the plaintiff's expert. Instead, Rule 702 only requires that an expert possess "knowledge, skill, experience, training, or education" sufficient to "assist" the trier of fact, which is "satisfied where expert testimony advances the trier of fact's understanding to any degree." 29 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6265 (1997). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.*; *see also Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593, 598 (3d Cir. 1998) (holding trial court abused its discretion by excluding testimony simply because the trial court did not deem proposed expert to be the best qualified or because proposed expert did not have the specialization that the trial court considered most appropriate). However, Rule 702 does require that "the area of the witness's competence matches the subject matter of the witness's testimony." WRIGHT & GOLD, *supra* § 6265. Most courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting. *Id.*

Although not an orthopedist, Dr. Horenstein assisted the trier of fact with relevant testimony from his expertise in neurology. Dr. Horenstein's testimony pertained to the cause of the shoulder problems that made Robinson's surgery necessary. His testimony regarding the usual onset of shoulder pain was within his realm of expertise as a neurologist. As a physician, he could testify regarding the likely type of injury one would sustain by the impact of the arm into the shoulder joint. Also, Dr. Horenstein's study of the subject qualified him to testify regarding the direction one would be forced in a rear-impact collision. Therefore, the district court did not abuse its discretion by admitting his testimony.

## B. *Causation*

The district court found that the automobile accident did not cause Robinson's shoulder condition or the need for the surgery performed by Dr. Lee. Robinson argues that the record contradicts the district court's findings of fact regarding causation. Although a plausible alternative theory of the cause of Robinson's injury exists, substantial evidence supported the district court's conclusion. Therefore, we affirm.

"In reviewing a district court's order entering judgment after a bench trial, we review the court's factual findings for clear error and its legal conclusions de novo." *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir. 2002) (citing Fed. R. Civ .P. 52(a)). Rule 52(a) requires that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." "A factual finding supported by substantial evidence on the record is not clearly erroneous. A district court's choice between two permissible views of evidence cannot be clearly erroneous." *Tadlock*, 291 F.3d at 546 (citations omitted).

The district court found that Robinson failed to establish by a preponderance of the evidence that the condition in her shoulder was caused by the accident. Dr. Horenstein's testimony provides substantial evidence in support of the district court's finding. Dr. Horenstein testified that the condition in the plaintiff's AC joint probably resulted from preexisting shoulder joint disease. Robinson's medical history of right shoulder pain, as well as her Type II acromion and postural factors, support this conclusion. Robinson suffers from a similar condition in her left shoulder, which may require surgery in the future.[5] Although Dr. Lee offered a plausible theory of causation that differed from that of Dr. Horenstein, "[a] district court's choice between two permissible views of evidence cannot be clearly erroneous." *Tadlock*, 291 F.3d at 546. Moreover, the district court concluded that Dr. Lee's opinion was entitled to less

---

[5]The condition in this shoulder is the result of Type II acromion and postural factors and is not the result of the automobile accident.

weight because Robinson did not inform him of her prior episodes of similar shoulder pain and did not accurately represent the circumstances of the collision.

Furthermore, even if Robinson's shoulder absorbed the impact of the collision in the manner theorized by Dr. Lee, Dr. Horenstein viewed Robinson's injury as inconsistent with the injury typically expected. He explained that the shoulder contains a dense concentration of nerves and that the impact of the arm against these nerves would cause immediate pain, not the delayed onset of pain experienced by Robinson. In short, Dr. Horenstein's testimony undercut plaintiff's theory of causation, and the district court credited the testimony. We hold substantial evidence supported the district court's finding that Robinson failed to establish causation.

### III. *Conclusion*

The district court did not abuse its discretion by allowing Dr. Horenstein's testimony, and his testimony provided substantial evidence in support of the district court's conclusion. Therefore, we affirm.

_____