# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-3636/05-3835

_____

Leonard Snider; National Sales      *
Service, L.L.C., also known as      *
National Service Sales, L.L.C.,      *
     *
       Appellees/Cross-Appellants,      *
     *
v.      *
     *
United States of America,      *
     *
       Appellant/Cross-Appellee.      *


_____

No. 05-3639

_____

Theresa J. Turley, formerly known as      *
Theresa J. Ballister, doing business as      *
AA Cleaning; Labor Resources, L.L.C.,      *
     *
       Appellees,      *
     *
v.      *
     *
United States of America,      *
     *
       Appellant.      *

Appeals from the United States
District Court for the
Western District of Missouri.

_____

No. 05-3836

_____

Theresa J. Turley, formerly known as     *
Theresa J. Ballister, doing business as     *
AA Cleaning; Labor Resources, L.L.C.,     *
    *
      Appellants,     *
    *
v.     *
    *
United States of America,     *
    *
      Appellee.     *

_____

No. 05-4203

_____

Leonard Snider; National Sales &     *
Service, L.L.C., also known as     *
National Service Sales, L.L.C.,     *
    *
      Appellees,     *
    *
v.     *
    *
United States of America,     *
    *
      Appellant,     *
_____

Theresa J. Turley, formerly known as     *
Theresa J. Ballister, doing business as     *

-2-

AA Cleaning; Labor Resources, L.L.C.,   \*
   \*

      Appellees,           \*

   \*

v.                         \*

   \*

United States of America,      \*

   \*

      Appellant.           \*

———————

Submitted: June 12, 2006
Filed:  November 8, 2006

———————

Before SMITH, WOLLMAN,[1] and GRUENDER, Circuit Judges.

———————

SMITH, Circuit Judge.

Certain Taxpayers sued the United States[2] alleging numerous disclosures of taxpayer return information by Special Agent Robert Jackson of the Internal Revenue Service (IRS), in violation of 26 U.S.C. § 6103. Following a bench trial, the district court entered judgment in favor of Taxpayers. The court awarded actual, statutory, and punitive damages, as well as expert witness and attorney's fees. The government appeals, raising several allegations of error. Taxpayers cross-appeal, arguing that the district court erred by not finding additional unauthorized disclosures. We affirm in part and reverse in part.

---

[1]The case was submitted for oral argument to Judges Heaney, Smith and Gruender on June 12, 2006. Judge Heaney retired on August 31, 2006. Judge Wollman joined the panel on October 27, 2006 for consideration of the matter. See 8th Cir. R. 47E.

[2]26 U.S.C. § 7431

## I. *Background*

Taxpayer Leonard Snider operated a business called National Sales and Service, LLC ("NSS"). Taxpayer Theresa Turley operated a business called Labor Resources. These businesses supplied workers to hotels and businesses near the Lake of the Ozarks, Missouri. In July of 2001, the IRS opened a criminal administrative investigation against Snider and Turley after receiving a tip that they were not paying income and employment taxes, employing illegal aliens, submitting false documents regarding those illegal aliens, and engaging in money laundering.

Special Agent Robert Jackson with the IRS Criminal Investigation Division in Kansas City, Missouri, performed the investigation. In the course of his investigation, Jackson disclosed certain "return information" regarding the Taxpayers without legal authorization, in violation of § 6103. Essentially, Jackson told many third parties that the Taxpayers were being investigated for criminal tax violations and accused the Taxpayers of several crimes. Jackson also warned some of the Taxpayers' business customers that they might be liable for the Taxpayers' unpaid taxes.

In one instance, Jackson interviewed Ineke Kirby, who performed accounting services for Turley in 2000 and 2001. During the interview, Jackson made the following affirmative statements, all of which constituted return information: (1) Turley had a large increase in income from 1999 to 2000 that was questionable; (2) Turley employed illegal immigrants; (3) Turley was avoiding paying employer taxes; (4) Turley and Snider were involved in money laundering; and (5) Turley's workers used fake social security numbers. Jackson also disclosed return information when he showed Turley's 1999 tax return to Kirby, which was the first time she had seen it. From this encounter, the district court found one unauthorized disclosure as to Snider and six unauthorized disclosures as to Turley.

In the course of his investigation, Jackson approached various employees, business associates, and customers for interviews. During the interviews, Jackson

stated to the interviewees that he was conducting a criminal investigation of Taxpayers. He represented to the interviewees that Taxpayers did not pay employment taxes, employed and harbored illegal immigrants, and were "involved in a scam" and a "grand conspiracy." In addition, Jackson repeatedly referred to Snider and Turley as criminals and stated that Snider had been criminally investigated previously. Jackson also told customers that they might be liable to the United States for Snider and Turley's "thousands and thousands of dollars" of unpaid taxes. Jackson showed numerous people various tax documents that the Taxpayers had filed. Lastly, after the administrative investigation ended and a grand jury investigation began, Jackson told interviewees that he was conducting a grand jury investigation of Taxpayers.

After noting the extensive training and written instructions that Jackson had received, the district court concluded that "Jackson repeatedly and intentionally engaged in conduct outside the standard of conduct for IRS special agents" and "further f[ound] that Jackson's Section 6103 disclosures were made knowingly, willfully, and intentionally and were the result of gross negligence as defined by [26 U.S.C. §] 7431(c)(1)(B)(ii)."

In total, the district court found Jackson made 79[3] unauthorized disclosures of return information to approximately 20 people. As demonstrated by the Kirby interview, the district court counted each piece of return information as an unauthorized disclosure. Thus, although Jackson only interviewed Kirby once, the six pieces of Turley's return information disclosed counted as six violations of § 6103. Similarly, the district court counted one unauthorized statement that was overheard by two people as two violations. For example, when Jackson interviewed Jennifer Fry, her husband, Greg Fry, was present and heard the entire conversation. Therefore, the district court considered each statement of unauthorized return information as two violations of § 6103 because two people received the disclosure. Counted in this fashion, the district court determined that Snider suffered 44 unauthorized disclosures,

---

[3]On page 14 of the district court's opinion, the court stated that Jackson made 78 disclosures of return information. The court stated in the paragraphs that immediately followed that Snider, NSS, and Turley suffered 44, 5, and 29 disclosures respectively. By our assessment of the record, this is a typographical error, as the district court in fact found 79 total disclosures. The reason for the discrepancy is that NSS actually suffered 6 disclosures of return information. On page 25 of the district court's opinion, the district court, discussing the damages to be awarded to each party, awarded NSS actual damages for the improper disclosures to Holiday Inn SunSpree and The Knolls Condominiums. The court then stated, "Having found 4 additional unlawful disclosures with respect to NSS, other than those made to the Holiday Inn Sun Spree [sic] and The Knolls Condominiums, the Court awards plaintiff NSS an additional $4,000 in statutory damages."

In the district court's recitation of the facts at the beginning of its opinion, it fails to mention the basis for the disclosure of NSS return information that caused NSS actual damages under its contract with The Knolls Condominiums. As discussed *infra* in Part II.B, the district court heard substantial evidence that NSS did in fact suffer such a disclosure, causing actual damages.

Considering the district court's opinion in its entirety, as well as the briefing of the parties with respect to the disclosures made to The Knolls, we believe that the actual number of disclosures found by the district court is 79, six of which were made as to NSS.

-6-

NSS suffered 6 unauthorized disclosures, and Turley suffered 29 unauthorized disclosures. The court declined to find that Jackson's March 10, 2002 Sworn Declaration filed with the court contained improper disclosures under § 6103.

The court found that Taxpayers substantially prevailed within the meaning of 26 U.S.C. § 7430(c)(4), entitling them to reasonable litigation costs and attorney's fees. The court also found that the government's position was not substantially justified as defined by § 7430(c)(4)(B). Finding that the actual damages sustained by Snider and Turley were less than $1,000 for each disclosure, the court awarded them statutory damages of $44,000 and $29,000, respectively. The court found that four of the disclosures as to NSS resulted in actual damages less than $1,000 and that the disclosure to two of NSS's clients resulted in actual damages totaling $9,794.63. Therefore, the court awarded NSS $4,000 in statutory damages and $9,794.63 in actual damages.

After finding that punitive damages were "warranted and necessary to punish the willful behavior and gross negligence of Jackson and to deter such behavior by others," the court awarded punitive damages using a ratio of two-to-one. Consequently, Snider, NSS, and Turley received punitive damages of $88,000, $27,589.26, and $58,000, respectively. The court also awarded Taxpayers expert witness fees of $4,050, costs of $4,400, and attorney's fees of $463,777.50.

The government asks this court to reverse the district court in essentially every respect, including the merits of the action, the calculation of damages, and the award of attorney's fees. Taxpayers, in their cross-appeal, ask this court to hold that Jackson's disclosures before the district court were unauthorized and to increase the damages award.

## II. *Discussion*

The Internal Revenue Code (IRC) provides that "Returns and return information shall be confidential" and strictly prohibits government employees from disclosing "any return or return information." 26 U.S.C. § 6103(a). The IRC broadly defines "return information" as

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

26 U.S.C. § 6103(b)(2)(A). A revenue officer may properly disclose return information "in connection with his official duties relating to any . . . civil or criminal investigation . . . to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to" the investigation. § 6103(k)(6). The statute further requires that "[s]uch disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation." *Id.*

## A. *Authorization*

The government argues that the disclosures made by Jackson were authorized. Specifically, the government contends that § 6103 permits the investigator to identify himself, state that he is performing a criminal investigation, and name the taxpayer under investigation. We disagree. Section 6103 clearly defines both "a taxpayer's identity" and "whether the taxpayer's return was, is being, or will be examined or subject to other investigation" as "return information." Therefore, the disclosures

made by Jackson were clearly prohibited by statute. In addition, in a section entitled "Return Information," the Internal Revenue Manual recognizes that "The statutory definition of 'return information' is very broad." IRM § 9.3.1.2.2. It goes on to state that an example of "return information" is "the fact that a person is under investigation." *Id*.

The government's argument that agents should be able to show their badges and identify themselves as criminal investigators as a necessary part of their investigation misses the mark. Such conduct is not prohibited by statute and does not constitute a disclosure of return information. An agent violates the statute, as well as the Internal Revenue Manual, when he or she identifies the subject of his or her investigation.

The government has neither shown that the disclosure of the Taxpayers' identity was necessary nor does the record reveal any necessity for the disclosures. First, Snider's attorney offered to supply the information that the IRS sought. However, Officer Jackson never attempted to obtain the documents from Snider. Second, Officer Jackson maintained throughout the litigation that he never made the disclosures during his investigation. The district court logically concluded the disclosures could not be both necessary and yet unmade during Jackson's investigation. We agree with the district court's analysis.

## B. *Good Faith*

The government next asserts that it should not be liable because the disclosures were made in good faith. Even if an unauthorized disclosure is made, the Internal Revenue Code excludes liability "with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b)(1). Under the good-faith defense, a government official may avoid liability for violating a constitutional or statutory right where that right is not clearly established such that a reasonable person would have known that his or her conduct violated the right. *See Jones v. United States*, 97 F.3d 1121, 1124 (8th Cir. 1996) (citing *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). The government bears the burden of proving the good-faith defense. *Jones*, 97 F.3d at 1124.

We hold that the district court did not err in finding that the government failed to establish the good-faith defense. As mentioned above, the plain language of the statute prohibits the disclosure of both "a taxpayer's identity" and "whether the taxpayer's return was, is being, or will be examined or subject to other investigation," as both forms of information constitute "return information." Therefore, it cannot be said that a reasonable officer would have failed to understand that such a disclosure would violate a clearly established right of the taxpayer.

## C. *Grand Jury Investigation*

The government next contends that disclosing the fact that Taxpayers were under grand jury investigation is not a disclosure of return information. However, the statute plainly provides that the fact that a taxpayer is under grand jury investigation constitutes "return information" because the statute defines "return information" to include "whether the taxpayer[ ] . . . is being, or will be . . . subject to *other investigation* . . . ." § 6103(b)(2) (emphasis added). While the government is correct that an agent can disclose that he or she is making an official inquiry, this does not mean that the agent can disclose the target of the investigation. The same reasons mentioned above that apply to disclosing the identity of the taxpayer under criminal investigation apply to disclosing the identity of a taxpayer under grand jury investigation. Therefore, the disclosure that the taxpayers were under investigation by a grand jury was not authorized and was not made in good faith.[4]

---

[4]Although the government says that only one district court opinion from another circuit supports the decision below, this argument misses the point, which is that the plain text of the statute prohibits Officer Jackson's actions. Therefore, the law was clearly established, albeit not by a court decision but by legislative pronouncement. Furthermore, the government fails to point to any case that actually adopted the rule that the government proposes. As mentioned, the government bears the burden of proving good faith.

### D. *Counting Disclosures*

Next, the government challenges the district court's method of counting. The government urges that we hold that (1) a disclosure to more than one person at a time amounts to one act of disclosure; and (2) a disclosure of more than one piece of return information in a single interview constitutes a single act of disclosure. We disagree. Increased culpability warrants increased punishment. Direct disclosures to multiple persons multiplies the harm to the taxpayer. Our sister circuit has held that one disclosure to two people counts as two separate disclosures. *Mallas v. United States*, 993 F.2d 1111, 1125 (4th Cir. 1993). As *Mallas* recognized, § 7431(c)(1)(A) imposes statutory damages for "each act of unauthorized disclosure of . . . return information," and § 6103(b)(8) defines "disclosure" as "making known to any person in any manner whatever a return or return information." *Id*. Accepting the government's position would nullify the language "in any manner whatever." *Id*. If a government official directly discloses a taxpayer's return information to two listeners at the same time, the official has informed both listeners and caused as much harm as telling them separately. *Id*. We see no reason why the government should benefit from a wider audience, especially where a wider audience means an increased injury to the taxpayer's privacy. The same reasoning applies to the quantity of information disclosed.

At the same time, we recognize the concerns addressed in *Miller v. United States*, 66 F.3d 220 (9th Cir. 1995). In *Miller*, the Ninth Circuit held that the IRS's disclosure of return information to a Los Angeles Times reporter, who subsequently published 184,000 newspapers containing the information, represented a single act of disclosure rather than 184,000 acts of disclosure. *Id*. at 223–24. The court reasoned that § 7431 "punishes 'disclosure,' not subsequent disseminations" and declined to extend *Mallas* to such a situation. *Id*. at 224. We agree that the proper limitation of liability is the initial act of disclosure, not secondary disclosures made by others such as the media. Because § 7431 represents a waiver of sovereign immunity, it must be "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

-11-

However, we do not agree with the Ninth Circuit's holding in *Siddiqui v. United States*, 359 F.3d 1200, 1202–03 (9th Cir. 2004), which extended *Miller* and declined to impose liability for an agent's unauthorized disclosure of return information in a speech to a party of 100 people. As discussed above, we believe that liability should track culpability and injury. A disclosure to 100 people is certainly more egregious than a disclosure to one person, and we believe that Congress drafted the statute to scale damages to injury and culpability with respect to the agent's own acts of disclosure. The method of counting performed by the district court is affirmed.

E. *Actual Damages*

The government also challenges the district court's award of actual damages to NSS, contending that they are not supported in the record. "'In reviewing a district court's order entering judgment after a bench trial, we review the court's factual findings for clear error and its legal conclusions de novo.'" *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) (quoting *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir.2002) (citing Fed. R. Civ.P. 52(a))). A factual finding is clearly erroneous when "although there is evidence to support a finding, on the entire evidence we are left with the definite and firm conviction that a mistake has been committed." *Hoefelman v. Conservation Comm'n of Mo. Dept. of Conservation*, 718 F.2d 281, 285 (8th Cir. 1983). "A factual finding supported by substantial evidence on the record is not clearly erroneous. A district court's choice between two permissible views of evidence cannot be clearly erroneous." *Robinson*, 447 F.3d at 1101 (citation and internal quotations omitted).

Here, the actual damages award is composed of two sets of damages—one from the Holiday Inn SunSpree's refusal to pay $3,638 under its contract with NSS and the other from The Knolls Condominiums' refusal to pay $6,156 under its contract with NSS. As for Holiday Inn, the district court committed no clear error. The court specifically found that Jackson made an unauthorized disclosure of NSS return information to Mark Bowman, the general manager of Holiday Inn SunSpree. Furthermore, the district court specifically found that "[t]he evidence at trial

demonstrates that the Holiday Inn terminated its contract with NSS after Jackson advised the general manager of the potential civil liability for payroll taxes due on accounts of the workers NSS supplied to the hotel. . . . Holiday Inn Sun Spree [sic] and The Knolls Condominiums both refused to pay outstanding invoices due and owing to NSS after meeting with Jackson."

With regard to The Knolls, the district court did not make specific mention of any unauthorized disclosure of NSS return information to any representative of the Knolls. However, Taxpayers point out that the district court heard evidence that on October 4, 2001, Jackson interviewed Dick Musial, the general manager of The Knolls, and Marjorie Forbis, the housekeeping supervisor at The Knolls, and that while Jackson was still on the premises, The Knolls "immediately terminated all workers supplied by [NSS] even though they were good workers."[5] The court also heard testimony from two witnesses that The Knolls considered NSS to have breached its contract. On this record, we are not left with a firm conviction that a mistake was made and affirm.

F. *Punitive Damages*

The government alleges that punitive damages are not available to the Taxpayers under § 7431(c)(1). The government is correct. Section 7431(c)(1) allows either (A) statutory damages; or (B) actual damages plus punitive damages, when available. Therefore, a plaintiff receiving statutory damages for an unauthorized disclosure cannot also recover punitive damages. *Mallas*, 993 F.2d at 1125–26. Other than the disclosures made to Holiday Inn SunSpree and The Knolls, the district court found that "the actual damages sustained by [Tapayers] as a result of the unauthorized disclosures of return information are less than $1,000 for each disclosure." However,

---

[5]Although Jackson made unauthorized disclosures to Marjorie Forbis, the housekeeping supervisor at The Knolls, the district court found that these disclosures pertained to Turley and Snider—not to NSS.

the court awarded punitive damages to Snider in the amount of $88,000, to NSS in the amount of $27,589.26, and to Turley in the amount of $58,000.

To the extent that the punitive damages overlap with statutory damages, the district court erred. We thus vacate the award of punitive damages to Snider and Turley. However, with respect to the punitive damages awarded to NSS, part of this award was based on actual damages. Because the district court followed a two-to-one ratio in assessing punitive damages, we amend the court's award to NSS to $19,589.26 in punitive damages based upon the $9,794.63 in actual damages. The remaining $8,000 in punitive damages awarded to NSS were based on the $4,000 in statutory damages awarded, and we vacate this portion of the punitive damages awarded to NSS.

## G. *Attorney's Fees*

The government argues that the Taxpayers were not entitled to attorney's fees because "they did not substantially prevail as to the amount in controversy, and because the position of the United States was substantially justified." The government does not challenge the amount of the award. The Taxpayers respond that (1) they are entitled to fees even if the government's position was substantially justified; (2) they substantially prevailed with respect to the amount in controversy and the most significant issue (that Jackson made numerous disclosures of return information); and (3) the government's position was not substantially justified.

Section 7431(c)(2)(3) allows a plaintiff to recover reasonable attorney's fees against the United States but only if the plaintiff is a "prevailing party" within the meaning of 26 U.S.C. § 7430(c)(4). Section 7430(c)(4) defines "prevailing party" as a party who either "has substantially prevailed with respect to the amount in controversy" or "has substantially prevailed with respect to the most significant issue or set of issues presented." However, "[a] party shall not be treated as a prevailing party . . . if the United States establishes that the position of the United States in the proceeding was substantially justified." § 7430(c)(4)(B). We review the district court's

award of attorney's fees for an abuse of discretion. *Kaffenberger v. United States*, 314 F.3d 944, 960 (8th Cir. 2003).

Given the plain language of the statutes, Taxpayers fail in their argument that they are entitled to attorney's fees notwithstanding whether or not the government's position was substantially justified. The issues, then, are whether Taxpayers substantially prevailed and whether the government has shown that its position was substantially justified. We hold that the Taxpayers substantially prevailed and that the government's position was not substantially justified. Thus, the award of attorney's fees stands.

The Taxpayers substantially prevailed because they established that Jackson made numerous disclosures of return information. The conduct of Jackson certainly was "the most significant issue . . . presented" because the entire case turned upon his conduct, i.e., whether he made unauthorized disclosures of return information. By prevailing on this point, the Taxpayers substantially prevailed within the meaning of § 7430(c)(4)(A).[6]

We hold that the government's position was not substantially justified. The government contends that its position was substantially justified, arguing primarily that the decisive issue was one of witness credibility. The government cites *Jones v. United States*, 207 F.3d 508, 512–13 (8th Cir. 2000), which held that the district court

---

[6]The government attempts to make a legislative history argument that the amount in controversy is "determinative." However, the plain language of the statute says that a "prevailing party" is one that has substantially prevailed "with respect to the amount in controversy" or "with respect to the most significant issue." 26 U.S.C. § 7430(c)(4)(A). Because the statute is clear and unambiguous, we need not resort to legislative history.

Similarly, the government's attempt to distinguish legal issues from factual issues is unpersuasive. The statute says "issues" and does not distinguish between factual and legal issues.

correctly found that the government was substantially justified in its position because the IRS agent asserted that he never told the informant about the search warrant and the government was warranted in aggressively resisting the taxpayers' excessive damages claims. The government argues that under *Jones*, if the issue is witness credibility, then the government's position is always substantially justified.

We do not read *Jones* so broadly. *Jones* is distinguishable from the case at bar due to the number of disclosures involved and, more importantly, the number of witnesses to those disclosures. *Jones* involved the disclosure of a search warrant to one person—an informant. Here, Jackson made numerous unauthorized disclosures of return information to approximately twenty people. After deposing several of the Taxpayers' witnesses before trial, the government should have realized that Jackson lied when he maintained that he never made the alleged disclosures and thus that the government's position was not substantially justified. To that end, the district court made the following pointed observation: "At trial, [Taxpayers] produced 20 disclosure fact witnesses. Their collective testimonies were remarkably consistent in describing repeated, virtually identical, unnecessary disclosures, and provide compelling evidence of a pattern of improper disclosures by Jackson." Accordingly, we affirm the district court's award of attorney's fees.

## H. *Expert Witness Fees*

The district court awarded Taxpayers $4,050 in expert witness fees. The government posits that expert witness fees are not recoverable, and Taxpayers concede as much. We therefore vacate the award of expert witness fees.

## I. *Disclosures During Instant Litigation*

In their cross appeal, Taxpayers allege that Jackson made additional unauthorized disclosures to the Department of Justice in his March 5, 2002 Sworn Declaration and that these disclosures were then disclosed to the court. Specifically, Taxpayers argue that (1) the disclosures were "unnecessary to defend a civil damage claim and are contrary to the scope and purpose of § 6103;" and (2) the government

-16-

failed to "obtain the requisite request to disclose return information" in the proceedings below.

The government's most persuasive response is that the Taxpayers raise these arguments for the first time on appeal. We agree. Taxpayers argued before the district court that the disclosures were unauthorized because the civil proceedings below were "not 'tax administration' proceedings as defined in 26 U.S.C. § 6103(b)(4)." We agree with the government that this is not the same argument advanced on appeal.

As a general rule, we will not consider issues raised for the first time on appeal. *Norwest Bank of N.D., N.A. v. Doth*, 159 F.3d 328, 334 (8th Cir. 1998). "We may, however, consider an issue for the first time on appeal 'when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case,' or where manifest injustice might otherwise result." *Id.* (citation omitted). With respect to Taxpayers' argument regarding obtaining the requisite request for disclosure, the issue is not properly before us. Although Taxpayers aver that they raise "only issues of law," their opening brief belies this contention by pointing to the government's failed attempt to establish authorization pursuant to § 6103(h)(3). Taxpayers' argument regarding the necessity of the disclosure is closer to a purely legal issue; however, we decline to broadly review issues not raised and ruled upon by the district court.

## III. *Conclusion*

We affirm in part and reverse in part. Jackson's numerous disclosures of return information, including the fact that Taxpayers were under grand jury investigation, were unauthorized and were not made in good faith. Additionally, the district court properly counted the number of violations because the Taxpayers suffered increased injury to their statutorily protected privacy by the increased volume of information disclosed and the widened audience to whom the disclosures were made. We hold that the actual damages awarded are allowed by law and supported by the record. With regard to the punitive damages, we reverse the award with respect to the disclosures

for which the district court assessed statutory damages, reducing the punitive damages to $19,589.26. Because the Taxpayers substantially prevailed and the government's position was not substantially justified, we affirm the award of attorney's fees. We vacate the district court's award of expert witness fees. As for Taxpayers' cross appeal, we decline to reach the merits because the issues were not presented to the district court.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from parts II.A, B, D and G of the Court's opinion. I agree with the Court that § 6103(a) does not forbid an agent from showing his badge and identifying himself as a criminal investigator.[7] I also agree that Special Agent Jackson violated the statute when he disclosed return information beyond the identities of the Taxpayers under investigation. However, I would hold that Jackson's disclosures that the Taxpayers were under investigation do not constitute violations of § 6103(a) because they were necessary under § 6103(k)(6). In addition to being necessary, these disclosures were made consistent with the IRS's good faith interpretation of § 6103(k)(6) and the corresponding regulation at 26 C.F.R. § 301.6103(k)(6)-1 and Jackson's good faith interpretation of the IRS policy memorandum. *See* § 7431(b)(1). I also would hold that the number of disclosures for statutory damages purposes should be calculated based on each specific act of Jackson's disclosure, regardless of the number of individuals who heard each improper disclosure or the number of pieces of information disclosed in any single act

---

[7]While we have held that an agent's use of "Criminal Investigative Division" in circular letters to describe his or her position is not necessary, *see Diamond v. United States*, 944 F.2d 431, 436 (8th Cir. 1991), I agree with the Court that this disclosure is necessary during a personal interview because an interview is different than a circular letter. *See Payne v. United States*, 289 F.3d 377, 390-91 (5th Cir. 2002) (Garza, J., dissenting in part) (stating that witnesses have "social expectations about police identifying themselves" during an interview).

-18-

of disclosure.  Finally, I would hold that the Taxpayers are not entitled to attorney's fees because the Government's position was substantially justified.

Turning first to the question of Jackson's disclosures that the Taxpayers were under investigation, I would hold that these disclosures were not violations of § 6103(a).  I agree with the Court that Jackson disclosed return information as defined in § 6103(b)(2)(A), but these disclosures were necessary under § 6103(k)(6). Furthermore, these disclosures were based on the IRS's good faith interpretation of § 6103(k)(6) and the corresponding regulation as well as Jackson's good faith interpretation of the IRS policy memorandum.  *See* § 7431(b)(1).

It frequently will be necessary for a special agent to disclose that a taxpayer is under investigation when he questions a third-party witness during an investigation. The term "necessary" in § 6103(k) is undefined by that statute.  Two possible interpretations are "strictly essential" or "appropriate or helpful." *Payne v. United States*, 289 F.3d 377, 389 (5th Cir. 2002) (Garza, J., dissenting in part).  The "strictly essential" meaning, which the district court appeared to adopt, would require absolute proof that there was no other possible means for obtaining information.  *Id*. at 389-90. This rigid definition is not commonly used in legal contexts.  *Id*. (citing *Comm'r v. Heininger*, 320 U.S. 467, 471 (1943)).  Instead, the "appropriate or helpful" meaning of "necessary" is the only practical interpretation in this context.  *Id*.  In fact, just prior to some of the final interviews at issue in this case, the IRS expressly adopted the "appropriate or helpful" definition pursuant to Congress's authorization for the IRS to identify the situations where a disclosure is necessary.  § 6103(k)(6).  The temporary regulation defined "necessary" as "appropriate and helpful in obtaining the information sought."  26 C.F.R. § 301.6103(k)(6)-1T(c)(1) (effective July 10, 2003). The current regulation continues to employ this definition of "necessary."  26 C.F.R. § 301.6103(k)(6)-1(c)(1) (2006).  Therefore, I would adopt the "appropriate or helpful" meaning of "necessary."

A special agent's disclosure of the taxpayer who is under investigation is almost always appropriate or helpful during an interview because third-party witnesses expect an agent to disclose the reason for the interview. *See Payne*, 289 F.3d at 390 (Garza, J., dissenting in part); *Gandy v. United States,* 234 F.3d 281, 286 (5th Cir. 2000). This disclosure is helpful because of the spontaneous and personal nature of an interview and the witness's apprehension naturally occasioned by the presence of a criminal investigator. Absent this degree of introductory detail, a third-party witness typically will fear that he or she is a target of the investigation and, as a result, be less than candid or exercise his or her right to refuse to answer questions. Setting the witness's mind at ease on this point will often be necessary to encourage the witness to speak freely in response to an agent's questions.[8] *See Fostvedt v. United States*, 824 F. Supp. 978, 983 (D. Colo. 1993) (finding the disclosure of "such minimal, 'nonsensitive' facts as the taxpayer's name" during an investigation was necessary), *aff'd* 16 F.3d 416 (10th Cir. 1994) (unpublished); *Rhodes v. United States*, 903 F. Supp. 819, 824 (M.D. Pa. 1995) (holding that minimal disclosures such as the name of the investigated taxpayer fall within the § 6103 exception).

Jackson's disclosures that the Taxpayers were under investigation were necessary despite the Taxpayers' witnesses' post hoc testimony at trial that they would have been cooperative without these disclosures by Jackson. The district court incorrectly determined that these disclosures were unnecessary based on a "strictly essential" definition of "necessary." However, under the "appropriate or helpful" meaning of "necessary," Jackson's disclosures were "helpful" in establishing the

---

[8]It is true that a special agent could inform the witness that he or she is not being investigated without identifying the taxpayer who is being investigated. However, such evasiveness by the special agent about the true target of the criminal investigation would likely leave some doubt in the witness's mind about his or her status as a potential target and create an untrustworthy environment for the ensuing interview. Instead, an agent's specific disclosure of the actual taxpayer being investigated is more likely to reassure the witness and result in a successful and candid interview.

-20-

needed trust of the witnesses at the outset of the interviews. If Jackson had missed an introductory opportunity to gain this trust, the interview may not have been salvageable. While there might have been another way to gain this trust, evidence showing "some [other] possible way" to obtain information cannot render an oral disclosure unnecessary under the "appropriate or helpful" definition. *Payne*, 289 F.3d at 390 (Garza, J., dissenting in part). Therefore, Jackson's disclosures of the identities of the Taxpayers under investigation were necessary.

The Court and the district court incorrectly dismiss Jackson's necessity defense based on the assertion that Jackson denied making these disclosures. This reasoning is flawed in its premise because Jackson, in fact, did testify at trial that he began his interviews by disclosing the names of the taxpayers being investigated.[9] Trial Transcript at 783-84, 824. Because Jackson did, in fact, acknowledge disclosing that the Taxpayers were under investigation, his necessity defense cannot be denied on that basis.

Even if I were to find that the disclosures were not necessary, I would find that Jackson's disclosures that the Taxpayers were under investigation also resulted from the IRS's and Jackson's good faith interpretations that such disclosures were necessary under § 6103(k)(6). When an agent discloses return information that is not necessary under § 6103(k)(6), the IRS and its agent will not be liable if the disclosure "results from a good faith, but erroneous, interpretation of § 6103." § 7431(b)(1). We have expressed two different viewpoints regarding this good faith exception. Under one view, the good faith exception only applies when the IRS, not the special agent, interprets the statute in good faith. *Diamond*, 944 F.3d at 435. Under the second view, the good faith exception also applies when the special agent interprets the IRS

---

[9]Jackson did deny disclosing other facts to the third-party witnesses, such as the facts that one Taxpayer employed illegal immigrants and that two Taxpayers did not pay taxes on workers. Trial Transcript at 861-62, 865-66. However, these facts are not at issue.

guidelines in good faith. *Jones v. United States*, 97 F.3d 1121, 1125 (8th Cir. 1996). Under either viewpoint, Jackson's disclosures that the Taxpayers were under investigation resulted from a good faith interpretation of § 6103(k)(6) and the corresponding regulation.

At the time of Jackson's disclosures, the courts had not provided clear guidance concerning the necessity of orally disclosing the identity of the taxpayer under investigation. *See Diamond*, 944 F.2d at 437; *Gandy*, 234 F.3d at 285. The Fifth Circuit in *Gandy* avoided the question and simply stated that the necessity of disclosing the identity of the taxpayer under criminal investigation during an interview with a witness was a "difficult legal question." *Id*. Rather than addressing that difficult question, the Fifth Circuit instead affirmed the oral disclosures based on the agent's good faith in making the disclosures. *Gandy*, 234 F.3d at 285.

In the absence of controlling authority, the IRS interpreted § 6103(k)(6) and the corresponding regulation in good faith and determined that it was necessary for its special agents to disclose the identity of the taxpayer under investigation during third-party interviews. The IRS released a memorandum based on this good faith interpretation of § 6103(k)(6) that provided direction to special agents as to the appropriate method of introducing themselves at a third-party witness interview. The memorandum directed special agents to identify themselves as follows:

> Mr. or Ms. XXXXXX my name is John Doe, I am a special agent with Internal Revenue Service, Criminal Investigation (display credentials for examination and introduce any other officials present). I am conducting an investigation of Mr. or Ms. XXXXX and I would like to ask you some questions regarding this matter.

*Memorandum for CI Special Agents in Charge*, Internal Revenue Service, Criminal Investigation, Feb. 2, 2001 (Def. Exhibit 51). The memorandum, along with the lack of clear guidance by the courts, suggests that the IRS interpreted the necessary exception of § 6103(k)(6) in good faith. In *Diamond*, we applied this good faith

-22-

exception to the IRS in a similar manner. Although we held that the use of "Criminal Investigation Division" in circular letters was not necessary, we still found that the IRS interpreted § 6103(k)(6) in good faith. *Diamond*, 944 F.2d at 435-36. The IRS made a similar good faith interpretation in this case.

Jackson also acted in good faith by adhering to this IRS policy. Jackson testified that he generally followed the IRS's recommended method of introducing himself to witnesses, including the disclosure of the identity of the taxpayer under investigation. Jackson gave the following description of his method of introducing himself to witnesses: "I would introduce myself as Rob Jackson. I'm a special agent with IRS Criminal Investigation and I'm conducting an interview [sic] of Mr. Snider and Ms. Turley and I would show them my credentials." Trial Transcript at 782. This testimony demonstrates that Jackson's disclosure that the Taxpayers were under investigation was consistent with the IRS's policy. Therefore, because both the IRS's interpretation of § 6103 and Jackson's interpretation of the IRS's policy were in good faith, I would find no liability for Jackson's disclosures that the Taxpayers were under investigation.[10]

---

[10]The IRS memorandum suggests that agents should disclose that the taxpayers are under investigation, but not under *criminal* investigation. The district court found that Jackson disclosed that one or more of the Taxpayers were "under criminal investigation" in some interviews and that one or more of the Taxpayers were "under investigation" in other interviews. I find no reason to distinguish between the two situations because Jackson, in both situations, interpreted the IRS memorandum in good faith. Jackson could reasonably believe that it was appropriate to disclose that the Taxpayers were under criminal investigation when he was also authorized to state (1) he was a special agent in the Criminal Investigation Division and (2) he was investigating the Taxpayers. Any reasonable person would deduce that a special agent working in the Criminal Investigation Division was conducting a criminal investigation. Thus, in light of the conclusion that § 6103(a) allows Jackson to identify himself as an agent in the Criminal Investigation Division, the distinction between a criminal investigation and an investigation is insignificant.

Next, I would find that § 7431(c)(1)(A) limits the statutory damages for disclosures to the number of specific acts of disclosure. When there are no actual damages, the number of violations for purposes of determining statutory damages is based on "each *act* of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable." 26 U.S.C. § 7431(c)(1)(A) (emphasis added). A statement by a special agent is a single "act," regardless of the number of people who hear the statement or the number of separate items of return information included in the statement. Even if one oral disclosure is heard by numerous people, it is still one "act" of disclosure. *Siddiqui v. United States*, 359 F.3d 1200, 1202-03 (9th Cir. 2004) (holding that an oral disclosure to 100 people did not equal 100 disclosures). I agree with the Ninth Circuit's reasoning in *Siddiqui* that this interpretation of § 7431(c)(1)(A) is based on the "plain meaning of the language used by Congress in § 6103." *Id.* at 1202. Additionally, if one oral disclosure includes numerous items of return information, it is still one "act" of disclosure. *See Rorex v. Traynor*, 771 F.2d 383 (8th Cir. 1985).

Under the Court's expansive reading of the statute, the statutory damages for a single act of disclosure could result in an unimaginable windfall to a taxpayer for a disclosure disseminated to a large number of recipients over the internet, television or radio. For instance, a single disclosure of a taxpayer's return information to one million people on national television would result in $1,000,000,000 in statutory damages. This surely was not the result Congress intended when it provided for statutory damages of $1,000 per act of improper disclosure in the absence of actual damages. The Court's concern that counting only the agent's "act" would "nullify the language 'in any manner whatever'" and not adequately "track culpability and injury" is unfounded. *Ante* at 10-11. The statute provides for actual damages where dissemination to multiple listeners or of multiple items of return information results in more substantial injury. Because a taxpayer can use evidence of widespread dissemination to prove actual damages, there is no disproportionality to culpability or injury. The taxpayer is free to prove that the disclosure resulted in actual damages to the extent that actual damages exceed the statutory damage amount of $1,000 for the

act of improper disclosure. In the instant case, applying the plain language of the statute would reduce significantly the number of disclosures found by the district court for which statutory damages are appropriate. For example, the district court found seven unauthorized disclosures of Leonard Snider's return information from Jackson's interview with Mark Bowman when it should have only found one unauthorized "act" of disclosure.

Finally, I would hold that the Taxpayers are not entitled to attorney's fees because the Government's position was substantially justified under § 7430(c)(4)(B).[11] The Government's position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 556 n.2 (1988). Where the Government relies on its witness's credibility, its position is substantially justified. *See, e.g., Jones v. United States*, 207 F.3d 508, 512-13 (8th Cir. 2000). The Government correctly argued that Jackson's credibility was a key issue in the case. While Jackson admitted to disclosing both his position with the IRS and the Taxpayers' identities in interviews, he denied any further disclosure of the Taxpayers' return information. As the district court stated, this was a case of witness credibility, and a reasonable person could agree with the Government's position. Consequently, the Government's position was substantially justified.

The Court incorrectly holds that the Government's position was not substantially justified because the Taxpayers' witnesses consistently refuted Jackson's testimony. However, the Government reasonably could believe that the district court would find these witnesses unreliable because of their biases and relationships with the Taxpayers. Additionally, the Government could also reasonably believe that the district court would find the special agent's testimony credible. Because a reasonable

---

[11]In addition, if the district court applied my analysis on remand, Taxpayers may not have substantially prevailed in this case. *See* §§ 7431(c)(3), 7430(c)(4).

person could believe the Government's position, it was substantially justified. Therefore, the taxpayers should not be entitled to $463,777.50 in attorney's fees.

For these reasons, I respectfully dissent in part and would remand for a determination of the correct number of violations and damages consistent with this opinion.

_____